IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,      )
                               )
                    Plaintiff, )
                               )
v.                             )        No. 3:19-CR-155-TAV-DCP
                               )
ROGERS MOORE, JR.,             )
                               )
                    Defendant. )

## REPORT AND RECOMMENDATION

This case is before the undersigned for report and recommendation on Defendant Rogers Moore's Motion to Suppress Search of 2314 California Road and for a Franks Hearing and [to] Suppress Defendant's Statements to Police on July 19, 2019 [Doc. 92], filed on January 28, 2022. *See* 28 U.S.C. § 636(b). On July 18, 2019, Detective Tyler Ballard of the Knox County Sheriff's Office ("KCSO") obtained a search warrant for a residence on California Road, where Rogers Moore was allegedly staying. The following day, KCSO officers executed the search warrant at the California Road residence and seized drugs, currency, guns, ammunition, drug paraphernalia, and other items. Officers arrested and handcuffed Moore and questioned him outside the residence for forty-seven minutes. Defendant Moore seeks to suppress all evidence seized during the execution of the search warrant along with his statement, arguing law enforcement gained this evidence in violation of his rights under the Fourth and Fifth Amendments. Specifically, he contends that Detective Ballard's affidavit failed to provide probable cause for the search warrant and contains deliberately false statements, necessary to the probable cause finding. He also asserts that he did not waive his *Miranda* rights before he was questioned in police custody and did not voluntarily give a statement.

1

For the reasons discussed below, the Court finds that Detective Ballard's affidavit provides probable cause for the search of the California Road residence, Defendant Moore fails to establish that the affidavit contains a material false statement, and Defendant voluntarily waived his *Miranda* rights before answering questions. Accordingly, the Court respectfully recommends that Defendant's Motion to Suppress [Doc. 92] be denied.

## I. BACKGROUND

Defendant Moore is charged [Doc. 3] along with Defendants Brenda Austin and Monique Houston with conspiring to distribute and possess with intent to distribute heroin from June 27, 2018, through July 19, 2019 (Count One). Defendant Moore is also charged with possession of firearms in furtherance of a drug trafficking crime on July 19, 2019 (Count Three) and being a felon in possession of a firearm on July 14, 2019 (Count Two) and July 19, 2019 (Count Four). Defendant's Motion to Suppress arises out of the execution of a search warrant at 2314 California Road on July 19, 2019.

On July 18, 2019, KCSO Detective Tyler Ballard presented an affidavit [Doc. 92-1] in support of search warrants for an apartment at Lula Powell Drive and a residence on California Road. The seventeen-page affidavit details a confidential informant's controlled purchases of heroin from Defendant Moore at room 135 at the Days Inn hotel on May 9, July 8, July 11, and July 14, 2019 [Doc. 92-1, pp.8-12]; and at an apartment on Lula Powell Drive on May 22, 2019 [Doc. 92-1, p.9]. On July 18, 2019, the informant told the affiant that Defendant Moore had moved from the Days Inn and was staying at 2314 California Road [Doc. 92-1, p. 13]. On that same date, the confidential informant conducted a controlled purchase of one gram of a powder containing fentanyl and a white cutting agent from Defendant Moore at the California Road residence [Doc. 92-1, p.14]. The affidavit also contains information on heroin purchases from Defendant Moore

2

by three other confidential informants and a named informant at the Days Inn, Lula Powell Drive, and other locations [Doc. 92-1, pp. 4-5 & 7-8]. Based upon the information in Detective Ballard's affidavit, Knox County Criminal Court Judge G. Scott Green issued search warrants for the Lula Powell Drive apartment and the California Road residence on July 18, 2019.

Defendant Moore moved [Doc. 92] to suppress the evidence seized from the search of the California Road residence and his July 19, 2019 statement to law enforcement. The parties appeared before the undersigned on March 4, 2022, for a hearing on the motion. Assistant United States Attorney Brent Nelson Jones appeared on behalf of the Government. Attorney Forrest L. Wallace represented Defendant Moore, who was also present. The Court heard the evidence and arguments presented by the parties and took the motion under advisement at the conclusion of the hearing.

## II. POSITIONS OF THE PARTIES

Defendant Moore argues [Doc. 92] that Officer Ballard's affidavit failed to provide probable cause for the issuance of a search warrant. He contends that the affidavit lacks probable cause for three primary reasons: (1) the information from the confidential informant was not sufficiently reliable, (2) the affidavit fails to establish a nexus between the residence and the alleged crimes, and (3) the affidavit contains a false statement that is necessary to probable cause. Defendant also contends that he did not voluntarily waive his *Miranda* rights and that his statement to law enforcement was made under duress.

The Government contends [Doc. 94] the California Road residence was lawfully searched pursuant to a valid search warrant supported by probable cause. It maintains that the information from the confidential informants was sufficiently reliable and the affidavit provides a nexus between the California Road residence and evidence of drug trafficking. The Government also

3

argues that a *Franks* hearing is not warranted because Defendant has failed to show either a false statement or a material omission as to the events of July 18, 2019, or the nexus connecting Defendant to the residence. Finally, the Government argues that Detective Ballard orally advised Defendant of the *Miranda* warnings before questioning him during the search. It maintains that Defendant waived his rights and voluntarily responded to the officer's questions, as revealed by his responses and his prior experience with law enforcement.

### III. SUMMARY OF THE EVIDENCE

At the March 4, 2022 evidentiary hearing, the Government presented four exhibits and the testimony of Knox County Sheriff's Office ("KCSO") Detective Tyler Ballard. Defendant Moore testified in his own behalf. The Court summarizes the evidence as follows:

The Government introduced a video recording of the confidential informant's interaction with Defendant Moore at 2314 California Road on July 18, 2019 [Exh. 1].[1] The recording contains video of the informant inside the residence from approximately four minutes and eleven seconds (4:11) to thirteen minutes and twenty seconds (13:20), after which the video is black, but the audio continues. When the informant first enters the residence, Defendant is sitting in a recliner with small baggies and money in his lap. Defendant is also holding paper money in his hand. The video resumes at approximately thirty-five minutes and forty seconds (35:40) into the recording, as the informant leaves the residence. The remaining video shows the informant walking.

---

[1] The bottom right corner of the video recording [Exh. 1] has a date and time stamp of "2017/07/02 20:20:52," which is 8:20 p.m., on July 2, 2017. Neither party raised this as an issue with the video recording, and the search warrant affidavit reveals the investigation of Defendant Moore began in 2018. Moreover, at the start of the recording, Detective Ballard states the date is July 18, 2019, at 10:37 a.m. [Exh. 1]. Accordingly, the Court finds that the video recording of the intended controlled buy at the California Road residence was made on the morning of July 18, 2019.

4

The Government also introduced the Report of Investigation of Special Agent James E. Makemson of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which relates to the investigation of Defendant Moore [Exh. 2]. The report states that Special Agent Makemson retrieved eleven drug exhibits related to Defendant Moore from KCSO Narcotics Unit and sent these exhibits to the Drug Enforcement Administration ("DEA") laboratory for testing. The DEA test of the suspected controlled substance from July 18, 2019, revealed the 77.8 grams of powder contained no controlled substances. The DEA testing of the drugs seized during the July 19, 2019 search of the California Road residence revealed these substances to be 35 grams of heroin, 34.2 grams of methamphetamine, 56.6 grams of a powder that contained no controlled substances, and 36.1 grams of a powder that contained no controlled substances.

The Government also entered the audio recording of Detective Ballard's interview of Defendant Moore on July 19, 2019 [Exh. 3]. Finally, it introduced a copy of a Waiver of Rights Form, dated July 19, 2019, and signed by Defendant Moore [Exh. 4].

Detective Tyler Ballard testified that he is a KCSO detective assigned to the narcotics division. Based upon information from an informant, Detective Ballard began investigating narcotics trafficking by Defendant Roger Moore in early 2019. He said the informant told him that Moore was a heroin dealer and was known to carry weapons. When he began investigating Defendant Moore, Moore was based in an apartment but subsequently moved to the Days Inn on Callahan Drive in North Knoxville. Thereafter, Detective Ballard conducted multiple controlled buys from Defendant Moore using the confidential informant.

Detective Ballard described the process for a controlled buy of drugs with a confidential informant. He said before the controlled buy, law enforcement searches the informant and their car to confirm no controlled substances are on their person or in their car. Law enforcement

5

provides the money that the informant uses to purchase drugs from the target. Detective Ballard said prior to July 18, 2019, law enforcement used a confidential informant to make multiple controlled buys from Defendant Moore at locations other than 2314 California Road. He said these controlled buys are described in the affidavit in support of search warrants for 2314 California Road and 784 Lula Powell Drive [Doc. 92-1]. Detective Ballard stated that the search warrant affidavit contains an error on page fourteen, stating that a red Jeep is registered to Monique Houston. He said, instead, the red Jeep was registered to Kewanna Snowden. Also, on page fourteen, the address to which the Jeep is registered is erroneously given as 2314 California Drive, rather than 2314 California Road. Detective Ballard said these are the only two inaccurate statements in the affidavit.

Detective Ballard testified that a confidential informant conducted a controlled buy from Defendant Moore at the residence at 2314 California Road on July 18, 2019. He said he met with the confidential informant, searched him, and gave him money, before driving the informant to a location close to the California Road residence. Detective Ballard watched the confidential informant walk to the residence. Detective Ballard identified Defendant Moore as the individual sitting in a recliner on the video recording of the controlled buy [Exh. 1]. A female and a juvenile male also appear on the video recording. According to Detective Ballard, the video recording shows that Defendant Moore has money and a baggie containing a powder on his lap. He said the video does not show a "hand-to-hand exchange" of drugs for money. Detective Ballard testified that when the confidential informant returned to his vehicle, the confidential informant gave him a bag of drugs and the recording equipment.

Detective Ballard said after the controlled buy at the California Road residence, he prepared the search warrant affidavit. He was present at the execution of the search warrant along

6

with ATF Special Agent Jim Makemson, Captain David Ambrose, Lieutenant Chris Bryant, Detective Caleb Shuford, and members of the SWAT team. Defendant Moore was interviewed the day of the execution of the search warrant, and Detective Ballard recorded the interview on his digital recording device.

Detective Ballard said he advised Defendant Moore of the *Miranda* rights, but the advice of rights was not captured on the audio recording. He said it is his normal practice to record the entire interview, and he did not know why the advice of *Miranda* rights was not recorded. Detective Ballard stated that the advice of rights could have been "clipped off" when he transferred the file. Alternatively, he said if Defendant and Monique Houston were advised of the *Miranda* rights at the same time, that would have occurred before he started the recording. Detective Ballard said he would have read the *Miranda* rights from his cellphone, because he did not have a card containing the *Miranda* rights at that time. He said he did not recite the *Miranda* rights from memory. Detective Ballard said Defendant Moore did not ask for an attorney and agreed to answer questions. At the end of the interview, Detective Ballard had Defendant Moore fill out a rights advisement waiver form [Exh. 4]. He said he asked Defendant Moore to sign the waiver at the end of the interview because he had to get the form from his car. Defendant signed the waiver and initialed after each of his rights. Detective Ballard signed the waiver as a witness.

Detective Ballard agreed that a few weeks ago, AUSA Jones asked him for his report and the video of the controlled buy at the California Road residence. Detective Ballard agreed that these two items had not been provided before that time and that AUSA Jones then gave a copy of the video recording to defense counsel. Detective Ballard stated that the audio recording of the interview of Defendant Moore is the only version that exists and that there is not a version containing the advice of rights to Defendant Moore.

On cross-examination, Detective Ballard agreed that the audio on the video recording of the July 18, 2019 controlled buy is difficult to hear at points. He did not recall Defendant Moore receiving a telephone call in the middle of the video. After the controlled buy, Detective Ballard debriefed the informant about what occurred. Detective Ballard agreed that he included in the affidavit the statements the informant said Defendant made to the informant, including that the informant told him Defendant said the drugs had been cut. He agreed that the informant went to the controlled buy intending to purchase heroin but reported during the debrief that he received fentanyl. Detective Ballard did not recall at what point on the video recording of the controlled buy Defendant and the informant discussed the substance the informant was purchasing.

Detective Ballard stated that he presented the affidavit in support of search warrants for two residences to Knox County Criminal Court Judge Scott Green. He stated that Judge Green signed the search warrants for both residences. Detective Ballard did not recall whether he discussed the criminal history of the informant with Judge Green when he applied for the search warrant. He said he typically does not disclose this information. Detective Ballard did not specifically recall applying for these search warrants from Judge Green. He agreed that he typically investigates the criminal history and pending charges of the informants employed by KCSO. Detective Ballard also did not recall discussing with Judge Green that the informant had been useful to law enforcement in the past and had assisted law enforcement in obtaining unrelated drug arrests. He agreed that he applied for the search warrants several years ago and has had a lot of other cases since then. He agreed that this could be why he does not recall these points.

Detective Ballard said he got the address of the California Road residence from the informant. The California Road residence is in the Lonsdale neighborhood in Knoxville. He said he searched the informant outside of his car before they traveled to the residence. Although he did

not specifically recall searching the informant, he testified that he knows it occurred because it is standard procedure. He said the money provided to the informant was photographed before the controlled buy. Detective Ballard said he was the only officer in the car when he drove the informant to the area of the residence, but another officer was in the area in a separate vehicle. Detective Ballard confirmed that he maintained view of the informant during the entire time he walked to the California Road residence and as he walked back. He agreed that he watched the front door of 2314 California Road, which is one of a series of townhouses or condominiums.

Detective Ballard agreed that the California Road residence had a back door. He did not know if the other officer could see the backdoor, but the informant entered and left through the front door. Detective Ballard said he was told that Defendant Moore was using methamphetamine during the time period of the investigation. He agreed that drug use and abuse can affect an individual's memory and ability to make decisions.

Detective Ballard testified that he was present during the execution of the search warrant at California Road on July 19, 2019. He was present when the SWAT team entered the residence. The SWAT team detained Defendant inside the residence. Detective Ballard said after he entered the residence, Defendant was brought outside. He did not recall if he spoke with Moore, while Moore was inside the residence. He said it is his practice to turn the recording device on just before he begins an interview. According to Detective Ballard, none of the other officers on the scene wore a body camera or recording device, and none had a dash camera in his vehicle.

Detective Ballard stated that he first spoke with Defendant Moore after Moore was brought outside. Defendant Moore was first brought to the front porch and was then taken to stand beside one of the vehicles by the road. Detective Ballard said that Defendant Moore and Ms. Houston were both sitting on the front porch, and he could have given the *Miranda* warnings to them then.

9

He described Defendant Moore as being very willing to cooperate. Detective Ballard said Moore did not want an attorney and was forthcoming with information on the questions he asked. He said Moore seemed tired because the officers had just awakened him. Detective Ballard said it was around 6:00 or 6:30 a.m., when he spoke with Defendant Moore. He stated that while he was talking with Defendant, the other officers were searching the residence. He agreed that officers were going in and out of the house and were asking Moore about items seized. He agreed that this procedure allowed them to obtain admissions from Moore about his possession of items seized. He did not know how long he had been interacting with Defendant Moore before he turned on the recording device.

On redirect examination, Detective Ballard testified that he does not typically provide a judge with information that is not in the affidavit supporting the search warrant. He agreed he was fairly confident that all the information he provided the judge in applying for the two search warrants relevant here is contained in the affidavit. He said he did not deliberately or intentionally provide an incorrect name on page fourteen of the affidavit. He said this was a typographical error. Detective Ballard said this incorrect name did not change the fact that a controlled buy occurred at 2314 California Road the previous day.

Detective Ballard said the informant used in this case was a paid informant. He said he believed the informant had a prior conviction for felony theft and some charges for simple possession. Detective Ballard said the informant was helping law enforcement, because he wanted to get drugs off the street.

Defendant Rogers Moore testified that he reviewed with defense counsel the video recording of the alleged controlled purchase of narcotics on July 18, 2019. He denied that he sold narcotics to the informant on July 18, 2019. He said his memory of that day was "pretty good."

Defendant Moore said he was present during the execution of the search warrant around 6:00 or 6:30 a.m., at the California Road residence. He agreed that during that time he was struggling with drug addiction and was using heroin, methamphetamine, and marijuana. He agreed that he was surprised when the SWAT team entered the California Road residence. Defendant Moore said he was detained and handcuffed. He said Detective Ballard entered the residence and asked him what he was doing with guns. He said he was then taken outside onto the front porch and, later, into the front yard. Defendant Moore said numerous officers were going in and out of the house, and he felt overwhelmed and nervous. He said he did not recall Detective Ballard advising him of the *Miranda* rights.

Defendant Moore testified that he is thirty-nine years old and that, at the time of the execution of the search warrant, he had been interviewed by law enforcement three times on prior occasions. He said he was familiar with the *Miranda* rights and understood them to mean that he had the right to remain silent. He agreed that he was also familiar with the right to have an attorney present for questioning. He said he and the officers had a "regular conversation" during the execution of the search warrant. Defendant Moore said Detective Ballard told him Ballard knew Defendant went to Atlanta, but Moore told Detective Ballard, "You know nothing."

Defendant Moore agreed he had never had a conversation like this with anyone else and, despite Detective Ballard's tone, it was not a normal conversation. He said he did not understand the rights waiver because he was under the influence of controlled substances. Defendant Moore said he subsequently had a drug test and was positive for heroin, methamphetamine, and marijuana. He agreed that he was abusing drugs into the early morning hours of June 19, 2019. He agreed he felt pressured to talk to Detective Ballard and that as he was speaking with the officers, he saw what was happening inside the house. He said he primarily spoke with Detective Ballard, although

11

he thought another officer asked him about his cellular phone. Defendant Moore said that he was handcuffed during his statement, and that Ms. Houston was inside the house.

On cross-examination, Defendant Moore testified that the initials on the rights wavier form are his. He admitted signing the rights wavier form but said he did not remember signing it. He agreed the reason that he did not remember was because he was under the influence of multiple drugs. He said he was using heroin, methamphetamine, and marijuana daily around July 19, 2019. He stated that he used heroin every three to four hours during that time. He agreed he was addicted to those drugs. He said he sometimes mixed heroin and methamphetamine, and he was also smoking marijuana daily.

Defendant Moore said he was "pretty sure" that Detective Ballard did not advise him of his rights that morning, although he knows what his rights are. He agreed that he talked about obtaining drugs in his interview. He said he was selling and using drugs at that time, but he did not sell any drugs at 2314 California Road on July 18, 2019. Defendant Moore said the confidential informant must have had drugs on his person when he came into the residence because he did not sell drugs to the informant. He said no one else was selling drugs at 2314 California Road on July 18, 2019. Defendant Moore testified that the drugs seized from 2314 California Road on July 19, 2019, were his. He said he did not sell drugs to the informant on the preceding day, because the informant did not talk to him about purchasing drugs and the drugs were not "real drugs."

## IV. FINDINGS OF FACT

Beginning in 2018, KCSO Detective Tyler Ballard conducted an investigation of heroin trafficking by Defendant Rogers Moore. Following several controlled purchases by a confidential informant in May and July 2019, Detective Ballard began preparing an affidavit to support an

application for search warrants for an apartment at Lula Powell Drive and room 135 at the Days Inn. However, while preparing the affidavit, Detective Ballard learned that Defendant Moore was moving out of the Days Inn. On July 18, 2019, the confidential informant told Detective Ballard that Defendant, his girlfriend Monique Houston, and their children were staying at 2314 California Road, the residence of Kewanna Snowden. Later that day, the confidential informant made a controlled purchase of what he believed to be one gram of fentanyl from Defendant Moore at the California Road residence. Detective Ballard completed the affidavit, including the information on the July 18 controlled buy, and obtained search warrants for the Lula Powell Drive apartment and the California Road residence.

Around 6:00 or 6:30 a.m., on July 19, 2019, Detective Ballard, ATF Special Agent James Makemson, KCSO officers, and a SWAT team executed the search warrant at the California Road residence. Defendant Moore was awakened by the officers, handcuffed, and removed to the front porch. Defendant and Ms. Houston were detained on the porch for a brief period. Then, officers moved Defendant to the yard beside a vehicle, where he agreed to be interviewed by Detective Ballard. At some point after Defendant was taken outside the residence and before the interview began, Detective Ballard advised Defendant Moore of the *Miranda* rights, which he read from his cellular telephone. Detective Ballard recorded his interview of Defendant, which lasted nearly forty-seven minutes. At the conclusion of the interview, Defendant signed a Waiver of Rights Form, agreeing he understood his rights and was willing to make a statement.

## V. ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and

13

particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fifth Amendment protects the right not to incriminate oneself. U.S. Const. amend V. Defendant Moore argues that his Fourth Amendment rights were violated by the issuance of a search warrants for the California Road residence and asks the Court to suppress all evidence seized from his residence. He also contends that his Fifth Amendment rights were violated when officers questioned him in custody, although he did not waive his rights. The Court examines each of these issues in turn.

## A. Sufficiency of Search Warrant

A search warrant issued in compliance with the Fourth Amendment must be based on "particularized facts" that demonstrate "'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). In the instant case, Defendant Moore contends that the affidavit in support of the search warrant failed to provide probable cause for three reasons: (1) the information from the confidential informant was not sufficiently reliable, (2) the affidavit fails to establish a nexus between the residence and the alleged crimes, and (3) the affidavit contains a false statement that is necessary to probable cause.

The Court begins by observing that an issuing judge's determination that probable cause exists is entitled to "'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)), *cert. denied* 531 U.S. 907 (2000). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular

14

place." *Gates*, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Id.* at 238-39. In making this determination, the Court considers only the information that was before the issuing judge—in other words, only what is contained within the four corners of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir.), *cert. denied,* 560 U.S. 959 (2010); *see also Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971).

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 244 n.13. Thus, the Supreme Court has observed that "probable cause is a flexible, common-sense standard," causing a person "of reasonable caution" to believe that the items are evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. *Gates*, 462 U.S. at 238. With these principles in mind, the Court turns to the search warrant in this case.

*(1) Reliability of Confidential Informant*

Defendant Moore argues that Officer Ballard's affidavit fails to show that the four confidential informants were sufficiently reliable. The Government contends that Officer Ballard relied primarily upon information from one confidential informant, who had provided reliable information multiple times in the past. Moreover, this informant's information regarding the California Road residence was corroborated by the video recording of the controlled buy.

If probable cause to issue a search warrant is gained from information provided by a confidential source, the issuing judge must have a basis for finding that the source is reliable or

credible and was in a position to know the information provided. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009); *see also Gates*, 462 U.S. at 233 (holding that a confidential informant's reliability and basis of knowledge are "relevant considerations in the totality-of-the-circumstances analysis"); *Allen*, 211 F.3d at 972-73. An informant's veracity or reliability and basis of knowledge are not rigid categories. *Id.* Instead, deficiencies in one aspect can be made up by a strong showing in the other. *Gates*, 462 U.S. at 232-33; *Allen*, 211 F.2d at 981.

Sixth Circuit "precedent 'clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.'" *United States v. Brown*, 732 F.3d 569, 574 (6th Cir.) (quoting *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001)), *cert. denied* 571 U.S. 1000 (2013). In *Greene*, our appellate court upheld the reliability of an informant whose prior assistance to law enforcement resulted in multiple arrests. 250 F.3d at 480. Additional corroboration is not required when the affidavit contains the personal observations of a confidential informant, known to the affiant to be reliable. *Brown*, 732 F.3d at 574 (affirming the probable cause based upon a known and reliable informant's observations of the defendant selling drugs at his home).

Here, the affidavit states the following on the reliability of the primary confidential informant:

> This CI has been providing information to me since March of 2018 and has also worked for the T.B.I. in Claiborne County, Tennessee. Since March of 2018, as a result of information from this CI, there have been at least ten (10) search warrants issued where illegal narcotics were seized and at least twenty (20) individuals have been arrested on drug related chargers [sic.].

[Doc. 92-1, p.5]. The Court finds the affidavit solidly establishes the reliability of the confidential informant. Defendant acknowledges the above statement of reliability in the affidavit but dismisses it as "a conclusory historical description of the CI's productivity" [Doc. 92, p.4].

16

Defendant argues that the affidavit fails to provide any detail on the search warrants, such as the type and quantity of drugs seized, and does not state whether the arrested persons were later convicted of misdemeanors or felonies. He also contends that the affidavit fails to identify the informant or provide his criminal history.

The Court finds Defendant's arguments about the deficiency of the affidavit are unavailing. Defendant fails to point to any case suggesting that the above statement of reliability is insufficient or that a statement of the informant's criminal history is necessary. Instead, our appellate court has repeatedly upheld probable cause based upon a statement that an informant has proved reliable in the past. *Brown*, 732 F.3d at 574 (holding statement that informant previously provided information that was corroborated and assisted in other investigations was sufficient to establish the informant's reliability, even without specifying that the prior investigations were for drug trafficking); *Greene*, 250 F.3d at 480 (holding affidavit's statement that informant assisted in state and federal investigations and provided information leading to numerous felony arrests was sufficient to show the informant was reliable); *Allen*, 211 F.3d at 975 (finding the informant's reliability was established by the affiant's statement that he had known informant for five years, the informant had worked for the narcotics unit for fifteen years, and the informant previously provided information on persons involved in criminal activity that had proven to be reliable); *United States v. Finch*, 998 F.3d 349, 352 (6th Cir. 1993) (determining statement in affidavit that informant previously provided information that led to drug arrests and seizures allowed the issuing judge to "readily conclude" the informant could identify cocaine).

Moreover, the undersigned agrees with the Government that Detective Ballard corroborated information from the confidential informant, including the information that the informant purchased suspected heroin from Defendant on July 18, 2019, at the California Road

residence. An affidavit that gives little information on an informant's past reliability may still establish the informant is reliable by independent corroboration of the informant's information. *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir.), *cert. denied*, 547 U.S. 1158 (2006). Here, law enforcement corroborated the informant's information that Defendant Moore is a heroin dealer and stores the heroin he has for sale in three or four locations to minimize the loss if he is apprehended by law enforcement [Doc. 92-1, p.6]. An "affidavit need not include . . . attestations [of the informant's reliability] if it sufficiently details a controlled buy that supports the informant's credibility." *United States v. Moore*, 999 F.3d 993, 998 (6th Cir. 2021). The affidavit relates that controlled purchases of heroin from Defendant were conducted in several locations, including the Lula Powell Drive apartment, the Days Inn, an apartment on Dry Gap Pike, and 2314 California Road [Doc. 92-1, pp.5-14]. Also, other confidential informants and a named informant Chris Jett all identified Defendant as a heroin dealer [Doc. 92-1, pp.5 & 7]. *See United States v. Pate*, 665 F. App'x 464, 472 (6th Cir. 2016) (concluding that information from second informant corroborated information from first informant). Furthermore, Defendant's lengthy criminal history related to drug trafficking corroborates the informant's information that Defendant was dealing heroin [Doc. 92-1, p.3]. *Moore*, 999 F.3d at 997 (finding defendant's history of drug trafficking supported the informant's tip); *United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008) (concluding statement of defendant's history of drug convictions was an "indicia" of the informant's reliability).

The informant's information that Defendant was living in room 135 at the Days Inn and moved on July 17, 2019, was corroborated by several controlled buys at the hotel and by surveillance by KCSO Officer Thomas Cook, who observed movers removing Defendant's belongings on July 17 [Doc. 92-1, pp.6-13]. The informant reported that during a controlled buy

at the Lula Powell Drive apartment on May 22, 2019, Defendant told him that he had a stolen motorcycle parked nearby [Doc. 92-1, p.9]. Knoxville Police Department officers recovered the stolen motorcycle near the Lula Powell Drive apartment later that same day [Doc. 92-1, p.9].

With regard to the controlled buy at 2314 California Road on July 18, 2019, Detective Ballard corroborated the informant's information that Defendant Moore and his girlfriend Monique Houston and their children were staying at the residence. The informant told Detective Ballard that on July 17, 2019, when the Defendant and Ms. Houston moved out of the Days Inn, Kewanna Snowden picked Ms. Houston up at the Days Inn in a red jeep [Doc. 92-1, p.14]. Detective Ballard checked utility records for 2413 California Road and found the utilities were in the name of Kewanna Snowden [Doc. 92-1, p.14].

Defendant argues that law enforcement did not corroborate any criminal activity at 2314 California Road.[2] However, police do not necessarily have to corroborate the criminal conduct observed by the informant; instead, corroboration of un-incriminating facts can be sufficient to establish probable cause. *Gates*, 462 U.S. at 243-44. "It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" *Id.* at 244-45 (quoting *Jones v. United States*, 362 U.S. 257, 269, 271 (1960)). Here, the informant's information was corroborated by controlled buys, information from other informants, police

---

[2] The Government argues that the audio and video recording of the July 18, 2019 controlled buy at the California Road residence corroborates the informant's information that Defendant sold him heroin inside the residence. The Court agrees that the video corroborates this information from the informant. Even though the video does not show a hand-to-hand exchange of drugs for money, it corroborates that Defendant was in the residence and that he had what appeared to be illegal drugs packaged for resale and currency in his lap. However, in assessing the sufficiency of probable cause for the issuance of a search warrant, the Court is limited to the four corners of the search warrant affidavit. The affidavit does not state that Detective Ballard reviewed the Exhibit 1 after the controlled buy; thus, the Court may not consider the recording in this part of the analysis.

surveillance, and police and utility records. The Court finds this corroboration reduced the chance that the information from the confidential informant was a reckless, prevaricating tale and provided a substantial basis for the issuing judge to credit the information from the informant, when assessing probable cause.

The Court also finds that the affidavit provides information on the reliability of the three other confidential informants. The affidavit relates that a confidential informant working with KCSO Narcotics Officer Aaron Shaffer made a controlled buy of heroin from Defendant Moore on July 23, 2018 [Doc. 92-1, p.4]. The affidavit reveals that Detective Ballard reviewed the video recording of the controlled buy, which shows Monique Houston giving the informant heroin in exchange for cash while Defendant is in the room [Doc. 92-1, pp.4-5]. The recording of the controlled buy corroborates the reliability of Officer Shaffer's informant. The affidavit also provides information that on June 27, 2018, two confidential informants working with the KCSO Retail Theft Unit said Defendant gave them money and heroin for stolen merchandise [Doc. 92-1, p.5]. This account was corroborated by Detective Ballard's review of the recording of the June 27 controlled buy [Doc. 92-1, p.5]. Accordingly, the Court finds the affidavit shows the four informants were reliable and their information could and does support probable cause for the issuance of the search warrant for the California Road residence.

*(2) Nexus*

Defendant also argues that the affidavit fails to provide a nexus between the California Road residence, where he was allegedly "staying," and evidence of drug trafficking [Doc. 92, p.5, 8]. With regard to the California Road residence, the affidavit provides the following: (1) Defendant, Ms. Houston, and their children relocated from the Days Inn to 2314 California Road on July 17, 2019; (2) Kewanna Snowden, who lives at 2314 California Road and to whom the

utilities at that residence were registered, drove Ms. Houston from the Days Inn on the day of the move;[3] (3) the primary confidential informant purchased one gram of suspected narcotics from Defendant Moore at the California Road residence on July 18, 2019; and (4) the informant knew that Defendant was sleeping on the couch and Ms. Houston and the children were sleeping in the upstairs bedroom at the California Road residence  [Doc. 92-1, pp 13-14, 16].

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'"  *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.) (*en banc*), *cert. denied*, 543 U.S. 851 (2004).  In other words, probable cause requires a "'nexus between the place to be searched and the evidence sought.'"  *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).  "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'"  *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 595).  Assessing whether an affidavit establishes a nexus turns upon the facts of a particular case and requires examination of the totality of the circumstances.  *Id.*

The Court finds that a controlled purchase of illegal drugs from the seller's place of residence provides a sufficient nexus between the location and the suspected criminal activity.  *Moore*, 999 F.3d at 998.  "After all, it is not much of a leap to infer that a suspect who has sold drugs from his home in the days preceding the issuance of a warrant will have evidence of that sale in his home."  *Id.* (citing *United States v. McCoy*, 905 F.3d 409, 417 (6th Cir. 2018)).  Here,

---

[3] The affidavit also states that Monique Houston owns a red jeep, which is registered to 2314 California Road.  While this information suggests a connection between Ms. Houston and the California Road residence, the Court notes that Detective Ballard testified that the statement that the red jeep belonged to Ms. Houston is a typographical error and that the jeep belongs instead to Kewanna Snowden.  As discussed in the next section, the Court finds this fact is not necessary to probable cause.  Accordingly, the Court does not include it in the analysis of nexus, even though the issuing judge would have considered this fact.

the informant purchased suspected narcotics from Defendant at 2413 California Road, the location to which Defendant had just moved and was now staying, on the morning of the same day the affiant sought the search warrant. The Court finds this alone provides a sufficient nexus between the residence to be searched and the evidence sought.

Additionally, a finding of nexus is further supported by the information of the Defendant's mode of operation in trafficking drugs out of multiple locations. The affidavit states that Defendant had been trafficking heroin out of the Days Inn room 135 since at least April 25, 2019 [Doc. 92-1, p. 7, information from Chris Jett]. The primary confidential informant purchased heroin from Defendant at the Days Inn room 135 on May 9, July 8, July 11, and July 14, 2019 [Doc. 92-1, pp.8-12]. The informant related that Defendant returned on July 13, 2019, from restocking his heroin supply in Atlanta with thirty-nine (39) ounces of heroin [Doc. 92-1, p. 6]. The informant said he was present when the thirty-nine ounces of heroin were divided into four separate baggies [Doc. 92-1, p.6]. The following day, the informant purchased .3 grams of a "brown, rock like substance represented to be heroin" from Defendant at room 135 [Doc. 92-1, p.12]. The affidavit states the informant told Detective Ballard that, at the time of the July 14 heroin purchase, Defendant had approximately thirty (30) grams of heroin in room 135 [Doc. 92-1, p.12-13]. On July 17, 2019, Defendant moved his entire operation out of room 135 [Doc. 92-1, p.13]. The informant told Detective Ballard he was assisting with the move, so that he could report "where Rogers Moore, Jr. had relocated this part of his heroin operation" [Doc. 92-1, p.13]. The following day, July 18, the informant reported that Defendant "had relocated from Room 135 at the Days Inn North Knoxville to 2314 California Road" [Doc. 92-1, p.13]. In light of Defendant's possession of thirty grams of heroin at the Days Inn only four days before, it is reasonably likely that Defendant had heroin at his new residence on California Road on July 18.

In summary, the Court finds that Detective Ballard's affidavit shows both the reliability of the confidential informants and a nexus between the California Road residence and evidence of drug trafficking. The affidavit provided probable cause for the issuance of a search warrant for 2314 California Road. The Defendant's request to suppress evidence seized from the California Road residence due to insufficient probable cause should be denied.

### (3) Franks Challenge

The Defendant also argues that Detective Ballard's affidavit contains affirmative false statements, which the affiant made with a reckless disregard for the truth. He contends, that when these false statements are omitted, the affidavit fails to provide probable cause to support the issuance of a search warrant. The Defendant requests a *Franks* hearing to show that the affiant, either deliberately or with reckless disregard for the truth, made a false statement in the affidavit. In support of his argument, Defendant supplements his motion [Doc. 94] with the affidavit of defense counsel, who states upon information and belief that at the evidentiary hearing, Defendant Moore will testify that he did not sell a controlled substance to a confidential informant on July 18, 2019, at the California Road residence. Defendant testified at the March 4 evidentiary hearing that neither he, nor anyone at the California Road residence, sold drugs to an informant on July 18, 2019, because the informant did not talk to him about purchasing drugs and the drugs were not "real drugs." Defendant contends that without the alleged controlled buy at the California Road residence on July 18, 2019, the affidavit is devoid of any nexus between the location to be searched and evidence of drug trafficking.

As discussed above, the reviewing court's evaluation of whether an affidavit establishes probable cause is typically limited to only the information that was before the issuing judge, i.e., only what is contained within the four corners of the supporting affidavit. *Brooks*, 594 F.3d at

23

492. "In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement." *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). The affidavit supporting a search warrant is presumed to be valid. *Franks*, 438 U.S. at 171. A defendant seeking a *Franks* hearing, "must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *Crawford*, 943 F.3d at 309 (quoting *Franks*, 438 U.S. at 171). "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Id.*

In *Crawford,* our appellate court described the "two questions of fact, and one of law," upon which "[a] *Franks* analysis turns:"

> The two questions of fact: One, is there a false statement included in an affidavit? If so, then two, how culpable is the affiant officer in including that statement in the affidavit? Where the affidavit does include a false statement, and where the officer making the statement was culpable in doing so, then the court turns to a question of law: After excising the false statement, is there sufficient information in the affidavit to constitute probable cause to issue a warrant?

943 F.3d at 309. Moreover, the defendant seeking a *Franks* hearing, must make a substantial showing of the affiant's culpability:

> The bottom line [in *Franks* was] that an evidentiary hearing on the affidavit's truthfulness was required *only* if the defendant alleged "deliberate falsehood or . . . reckless disregard for the truth." [*Franks*, 438 U.S. at 171]. "Allegations of negligence or innocent mistake," the Court emphasized, would be "insufficient." *Id.* And the allegations of deliberate or reckless falsehood "must be accompanied by an offer of proof." *Id.* Even having satisfied these steps, a defendant must still show that "when material that is the subject of the alleged falsity or reckless disregard is set to one side,"

24

the affidavit's remainder no longer demonstrates probable cause. *Id.* at 171–72. Only then is a defendant entitled to a *Franks* hearing to prove his allegations. *Id.* at 172. *Franks* thus drew an evidentiary line with reference to the well-known common-law scienter standards: negligence, recklessness, and willfulness. *See* Restatement (Second) of Torts §§ 8A, 282, 500 (1965). Only "substantial" evidence tending to show one of the two more culpable mental states, *Franks* said, would do.

*Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019). An officer's statement is only considered to be issued with "reckless disregard for the truth" if the defendant shows the affiant subjectively entertained "serious doubts as to the truth" of his allegations. *Bateman*, 945 F.3d at 1008 (6th Cir. 2019). "Allegations of [an officer's] negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171.

To demonstrate entitlement to a *Franks* hearing, Defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false." *Franks*, 438 U.S. at 170; *see United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) (observing that "this court's well-settled framework for *Franks* hearings requires a defendant to 'point to specific false statements.'") (quoting *United States v. Cummins*, 912 F.2d 98, 103 (6th Cir. 1990)). In his motion, Defendant challenges the entire "narrative of events" that allegedly occurred on July 18, 2019 [Doc. 92, p.7]. Defendant contends that Officer Ballard's plans to seek a search warrant for the Days Inn hotel room were foiled when Defendant vacated that room on July 17, 2019. Thus, according to Defendant, Officer Ballard rushed to set up a controlled purchase of heroin at the California Road residence on the following day.

At the March 4 evidentiary hearing, Defendant argued that the recording [Exh. 1] of this alleged controlled buy does not show that the informant purchased drugs from Defendant or even that they discussed a drug sale. Defendant also argued that the recording does not show that Defendant told the informant that the drugs he purchased were seven-tenths fentanyl cut with three-

25

tenths of a cutting agent, as stated in the affidavit. Defendant contends the statement that the informant conducted a controlled buy of drugs from Defendant at the California Road residence is a reckless representation of a fact essential to probable cause.

Defendant also argues that the July 18 transaction cannot be characterized as a "controlled purchase" because the officers maintained no controls. He asserts that the affidavit does not show the amount charged for the drug sale and states that the informant purchased fentanyl, despite previously relating that Defendant had recently restocked heroin. Defendant denies selling fentanyl to the informant on that day and at that location and argues the lack of controls, when compared to the other alleged controlled buys, demonstrate that the affiant deliberately or at least recklessly provided false information in this narrative. Defendant also contends that if the July 18 transaction is removed from the affidavit, nothing serves to connect the California Road residence with criminal activity, rendering the search unlawful.

The Government argues that Defendant has failed to show either a false statement or a material omission as to the events of July 18, 2019, or the nexus connecting Defendant to the residence. It argues that Detective Ballard's affidavit contains no deliberately false statements. Instead, Detective Ballard noted a single typographical error regarding the ownership of a red Jeep. The Government asserts that the video recording of the controlled purchase of drugs by the informant from Defendant at the California Road residence reveals Defendant has no basis to challenge the section of the affidavit relating to the events of July 18, 2019. It agrees that the recording does not show a hand-to-hand exchange of drugs, nor does it reflect the statement about the mix of fentanyl and cutting agent in the substance. However, the Government points out that portions of the video are black and some of the audio is unintelligible. Moreover, the officers took the typical precautions for a controlled drug purchase, searching the informant before the

controlled buy, watching the informant walk to and from the residence, maintaining surveillance of the residence during the controlled buy, and providing money for the controlled buy. Although the Defendant testified that he did not sell drugs to the informant, he also testified that he was abusing controlled substances around that time and his memory from that time is not good. The Government argues that the confidential informant was reliable and had conducted several controlled buys from Defendant at that time. Thus, it contends that Defendant failed to carry his burden of showing the affidavit contains a deliberate falsehood or material omission.

The Court looks at each allegation to determine whether it was false statement, whether the Defendant has shown the affiant to be culpable, and whether the statement is necessary to probable cause. The Court finds the evidence does not support the Defendant's contention that Detective Ballard deliberately or recklessly included a false statement that the informant purchased a suspected fentanyl mixture from Defendant at the California Road residence on July 18, 2019. The informant presented Detective Ballard with a powdered substance consistent with a fentanyl mixture,[4] the officers took the customary precautions of searching and surveilling the informant before and during the controlled buy, and the informant had reliably assisted law enforcement on numerous occasions in the past, including making several controlled buys from Defendant Moore. Thus, Detective Ballard did not deliberately or recklessly provide false information on the July 18 controlled buy in the affidavit.

Defendant Moore argues that the recording of the alleged controlled buy shows the statements in the affidavit to be false. First, there is no indication that Detective Ballard reviewed

---

[4] The DEA test of the powder the informant said he purchased from Defendant on July 18, 2019, revealed the powder contained no controlled substances [Exh. 2]. However, this fact does not show that Detective Ballard made a deliberately or recklessly false statement in the affidavit. The powder provided on July 18, 2019, was not tested until late August 2019 [Exh. 2].

27

the recording before creating the affidavit. However, the Court also finds that, although the video and audio on the recording of the controlled buy are faulty,[5] the recording supports the informant's statement that he purchased drugs from Defendant inside the California Road residence. The recording reveals that when the informant entered the residence, Defendant Moore was reclined in a recliner with cash and what appear to be small baggies of drugs on his lap. Defendant was holding a stack of cash in his hand. Although Defendant testified that he was abusing drugs on that day, the Defendant appears to be conducting drug sales, based upon the cash in his hand and on his lap and the individually packaged drugs. At 5:24 on the recording, the informant described to Defendant a conversation with a customer who criticized the quality of Defendant's drugs. At 11:14 on the recording, Defendant said, "Let me see if I can give you something," then went to the kitchen and reached into a cabinet. At 12:58 on the recording, the informant mentioned someone from Lafollette who works for the railroad and has money. At 16:52 on the recording, Defendant seems to be talking about numbers to the informant. All of this occurs prior to Defendant receiving a telephone call at 21:48 on the recording and discussing dog breeding with the caller. The Court finds the Defendant's proximity to individually packaged drugs and money along with the snippets of intelligible conversation, which seem to be related to drug sales and drug customers, support the informant's statement to Detective Ballard that he purchased what he believed were drugs from Defendant inside the residence on that day.

---

[5] The recording of the July 18, 2019 controlled buy is approximately thirty-nine minutes long, and begins with Detective Ballard announcing the date and that an informant is conducting a controlled purchase of one gram of heroin from Defendant Moore at 2314 California Road with $200 of recorded money [Exh. 1]. The video is not functioning and appears as a black screen from approximately thirteen minutes and twenty seconds (13:20) to thirty-five minutes and forty seconds (35:40), which is more than half of the recording. Additionally, it is difficult to hear the conversations of the informant and Defendant Moore throughout the recording because a television is playing loudly. The television along with other background noise drowns out the voices. Some parts of the conversations between Defendant and the informant are unintelligible.

28

The Court finds the evidence before it shows the informant conducted a controlled buy of what he believed to be drugs from Defendant Moore at the California Road residence on July 18, 2019. Although the powder received was not a controlled substance, Detective Ballard did not know and had no reason to suspect that it was not a controlled substance and, thus, did not deliberately or recklessly include a false statement in the affidavit. The Defendant's testimony that he did not sell drugs to the informant on July 18, 2019, because the substance was not an actual controlled substance does not contradict this finding.

Second, the Court finds that the false statement in the affidavit that Monique Houston owned a red jeep registered to "2314 California Drive" does not affect the probable cause finding. Detective Ballard admitted this statement was false but said that the inclusion of Ms. Houston, rather than Kewanna Snowden, as the owner of the jeep was a typographical error. The Court finds in addition to not rising to the level of culpability required for exclusion, the statement is not material to probable cause. The Court finds a nexus between the California Road residence and evidence of drug dealing based upon the July 18 controlled buy and the Defendant's moving his drug trafficking operation from the Days Inn to the California Road residence. The erroneous statement that Defendant's girlfriend owned a car registered to the California Road residence is not necessary to the nexus between the residence and evidence of drug trafficking.

Accordingly, the Court finds that Detective Ballard did not deliberately or recklessly include false statements in the affidavit. The Court also finds the statement on Ms. Houston's ownership of the Jeep is not material to probable cause. Defendant's request that the evidence be suppressed on this basis must be denied.

## B. Voluntariness of Defendant's Statement

The Fifth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself." In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966); *see also United States v. Salvo*, 133 F.3d 943, 948 (6th Cir.), *cert. denied,* 523 U.S. 1122 (1998). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Salvo*, 133 F.3d at 948.

In this case, upon law enforcement's entry into the California Road residence to execute a search warrant on the morning of July 19, 2019, Defendant Moore was handcuffed and detained. Officers took Defendant to the front porch, where he and Ms. Houston remained briefly, and then moved Defendant to the yard near the road. Detective Ballard interviewed Defendant for nearly forty-seven minutes and recorded the interview. At the end of the interview, Officer Ballard asked Defendant to sign a Waiver of Rights Form [Exh. 4], which Defendant initialed and signed. Defendant argues that his July 19 statement must be suppressed because he was in police custody and was not advised of his *Miranda* rights prior to making the statement. Defendant contends that signing a rights waiver after the fact does not cure the illegality of the statement. Finally, Defendant asserts that his statement was the product of duress because he was under the influence of controlled substances and was overwhelmed by the circumstances of the execution of the search warrant occurring around him.

The question for the Court is three-fold (1) did the officers advise Defendant of the *Miranda* warnings before he gave a statement, (2) did Defendant waive those rights, and (3) was Defendant's participation in the interview knowing and voluntary.

30

*(1) Advice of Rights*

First, Defendant contends that Officer Ballard did not advise him of the Miranda warnings before questioning him, while he was in custody. The obligation to administer *Miranda* warnings to suspects only arises if there has been "such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam). Here, Defendant was questioned by officers while handcuffed and detained during the execution of a search warrant. The Court finds, and the parties agree, that he was in custody. Thus, the *Miranda* warnings were required, and the Court finds they were given.

Detective Ballard testified that he advised Defendant of the *Miranda* rights orally before he began the interview. He said he pulled the *Miranda* warnings up on his cellular telephone and read the *Miranda* warnings to Defendant. Detective Ballard said he would usually include the advice of rights on the recording of an interview, and he did not know why they were not included on the recording in this case. He said the advice of rights may have been cut off when he transferred the recording or he could have provided the advice of rights to Defendant and Ms. Houston before he started to interview Defendant. The recording of the interview [Exh. 3] begins after the conversation with Defendant has already started. At the end of the interview, Detective Ballard says, "those *Miranda* rights I read to you, I'm going to have you sign a confirmation, just on a piece of paper, . . . that they were read to you, that you understand them, and just initial them." The Court finds this statement corroborates Detective Ballard's testimony that he read the *Miranda* warnings to Defendant before beginning the interview.

Defendant testified that he did not recall Detective Ballard reading him the *Miranda* rights and that he was "pretty sure" that Detective Ballard did not advise him of his rights that morning. The Court does not credit this testimony. Detective Ballard affirmatively testified that he gave the

advice of rights to Defendant before interviewing him. This testimony is corroborated by Detective Ballard's comment on the recording about having read the *Miranda* rights to Defendant. Accordingly, the Court finds that Detective Ballard advised Defendant of the *Miranda* warnings before Defendant gave a statement on July 19, 2019.

*(2) Waiver*

A waiver of *Miranda* rights must be knowingly and voluntarily given, but there is no requirement that a defendant waive his or her rights in writing. *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir.), *cert. denied* 537 U.S. 1130 (2002). In *Miranda,* "the Court held that an express statement can constitute a waiver, and that silence alone after such warnings cannot do so. But the Court did not hold that such an express statement is indispensable to a finding of waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). A defendant's "understanding of his rights and a course of conduct indicating waiver" can constitute a waiver of rights, even in the absence of an express waiver. *Id.* The prosecution bears the burden of proving a defendant has waived his or her *Miranda* rights and, in the absence of an express waiver, that burden is heavy; however, "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *Id.*

Relying on *Butler***,** our appellate court affirmed the state court's holding that a defendant waived his *Miranda* rights, even though he refused to sign the rights waiver form. *Davie v. Mitchell*, 547 F.3d 297, 304 (6th Cir. 2008) (finding Ohio Supreme Court's application of federal law was not objectively unreasonable), *cert. denied,* 558 U.S. 996 (2009). "Although Davie did not initial the waiver section on the form, Davie explicitly stated that he agreed to speak with the officers, and therefore effectively waived his *Miranda* rights." *Id.* at 306 (observing that defendant initiated the conversation and acknowledged that he understood his rights). Also, in *United States*

32

*v. Kaufman*, the court upheld the admissibility of the defendant's statement, despite the defendant's refusal to sign a waiver form, based upon the defendant's speaking freely to the officer after the *Miranda* warnings. 92 F. App'x 253, 256 (6th Cir. 2004).

In the instant case, the Government has produced a written *Miranda* waiver [Exh. 4], signed by Defendant Moore. The Defendant argues that his signing of the waiver after he gave the statement does not suffice to show that he waived his rights before he spoke. However, the Court finds Defendant's conduct during the interview revealed he waived his *Miranda* rights. Initially, the Court observes that Defendant testified that prior to the July 19, 2019 interview, he had spoken with police on three other occasions and that he knew his rights. The interview lasted for nearly forty-seven minutes. During the interview, Defendant never asked for an attorney, nor said he wanted to end the interview. Instead, Defendant repeatedly told the officers that he wanted to cooperate. Finally, Defendant did not object to Detective Ballard's statement at the end of the interview that Detective Ballard had previously read the *Miranda* rights to him and was following up with the rights waiver. Instead, Defendant signed the rights waiver form. Thus, the Court finds that Defendant Moore waived his *Miranda* rights and agreed to be interviewed by police.

*(3) Voluntariness*

Defendant argues that even assuming he was advised orally of his rights, he did not voluntarily waive his rights and speak with law enforcement. Defendant contends that his will was overborne by the circumstances of being handcuffed and questioned by officers, during the execution of the search warrant. Defendant also asserts that he was abusing controlled substances into the early morning hours prior to the execution of the search warrant. Thus, he argues his confession was the product of coercion. The Government responds that Defendant voluntarily

33

waived his *Miranda* rights and spoke with Officer Ballard, as is evident from both his responses and his prior experience with law enforcement.

Before an incriminating statement is admissible, the government must prove by a preponderance of the evidence that the defendant knowingly and voluntarily waived the *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986); *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (holding a valid waiver of the Miranda rights must be voluntary, knowing, and intelligent).

> A waiver is knowing if the suspect understands that he may "choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574, . . . (1987). A waiver is voluntary if the suspect's decision to talk is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421[.]

*United States v. Davis*, 683 F. App'x 480, 484 (6th Cir.) (rejecting defendant's argument that drugs prevented him from understanding and voluntarily waiving his rights), *cert. denied* 138 S. Ct. 160 (2017).

To assess whether a confession was voluntary, the Court must "examine 'the totality of the circumstances surrounding the confession, both the characteristics of the accused and the details of the interrogation, and determine[] their psychological impact on an accused's ability to resist pressures to confess.'" *United States v. Rigsby*, 943 F.2d 631, 635 (6th Cir. 1991) (quoting *United States v. Brown*, 557 F.2d 541, 546 (6th Cir. 1977)), *cert. denied*, 503 U.S. 908 (1992). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly*, 479 U.S. at 167. "If the police misconduct at issue was not the 'crucial motivating factor' behind [the defendant's] decision to confess, the confession may not be suppressed." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (citing *Connelly*, 479 U.S. at 163-64), *cert. denied* 490 U.S. 1020 (1989).

34

In the instant case, the Court finds the interviewing officers did not act coercively. Defendant was interviewed in the yard of the residence where he was staying. Detective Ballard was the primary interviewer, and Special Agent Makemson was present during the interview. Occasionally, Defendant spoke to other officers conducting the search of the residence, because he wanted them to bring him his cellphone or he was identifying items. The recording reveals that over the course of the interview, Detective Ballard moved Defendant into larger handcuffs, allowed him to smoke two cigarettes, and gave him a soft drink. Moreover, during his testimony, Defendant stated that his interview by Detective Ballard was a "regular conversation." This testimony along with the recording of the interview confirms that the officers spoke in a normal tone.

Additionally, the characteristics of the Defendant also indicate that he voluntarily spoke with the officers. Defendant was knowledgeable of his rights and had previously participated in interviews with law enforcement. Additionally, although Defendant claims he was overwhelmed by the situation, in part because he was under the influence of controlled substances, the recording of the interview does not substantiate this assertion. Defendant responded to questions appropriately and attempted to improve his situation by cooperating with police. Defendant's responses and comments in the interview reveal that he knew what was happening and appreciated the gravity of the situation.

Finally, the Court considers the totality of the circumstances surrounding the interview. The recording of the interview reveals that Defendant was concerned about Ms. Houston, his children, and his dog. He was also concerned about the effect his cooperation, specifically revealing the location of guns stored elsewhere, would have on the residents of that location. Detective Ballard repeatedly assured Defendant that he did not intend to arrest the residents of the

location where the guns were stored or to cause them to be evicted.  Importantly, the officers did not threaten to arrest or remove members of Defendant's family.  *See United States v. Johnson*, 351 F.3d 254, 262 (6th Cir. 2003) (holding that baseless threats to arrest a defendant's family members can render a confession involuntary); *see also Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) (holding police threat to take away defendant's children if she did not cooperate was coercive and rendered her confession involuntary).  Examining the totality of the circumstances surrounding the interview, the Court does not find that Defendant gave the statement under duress. Thus, considering the conduct of law enforcement, Defendant's characteristics, and the surrounding circumstances, the Court finds that Defendant knowingly and voluntarily waived his *Miranda* rights and participated in the interview.

In summary, the Court finds Detective Ballard advised Defendant of the *Miranda* rights before questioning him on July 19, 2019, at the scene of the execution of the search warrant.  The Court also finds that Defendant knowingly and voluntarily waived his *Miranda* rights and agreed to talk with the officers.  Accordingly, the Court recommends that the Defendant's motion to suppress his statements be denied.

## IV.     CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the Court finds that law enforcement properly searched the California Road residence pursuant to a valid search warrant.  The Court also finds that Defendant Moore knowingly and voluntarily waived his Fifth Amendment rights and talked with the officers.  Accordingly, the undersigned respectfully **RECOMMENDS** that that Defendant Moore's Motion to Suppress Search of 2314

California Road and for a Franks Hearing, and [to] Suppress Defendant's Statements to Police on

July 19, 2019 [Doc. 92] be denied.[6]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

37