UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,                )
                                          )
               Plaintiff,                 )
                                          )
v.                                        )      No.:   3:19-CR-155-TAV-DCP-1
                                          )
ROGERS MOORE, JR.,                        )
                                          )
               Defendant.                 )

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on April 13, 2022 [Doc. 98]. The R&R addresses defendant's Motion to Suppress Search of 2314 California Road and for a *Franks* Hearing, and Suppress Defendant's Statements to Police, on July 19, 2019 ("Motion to Suppress") [Doc. 92]. The government responded [Doc. 94], and Judge Poplin held a suppression hearing on March 4, 2022 [Doc. 95]. Judge Poplin then issued the R&R [Doc. 98], recommending that the Court deny defendant's Motion to Suppress. Defendant has filed objections to the R&R [Doc. 103], the government has responded [Doc. 104],[1] and the matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **OVERRULE** defendant's objections [Doc. 103], **ACCEPT** and **ADOPT** the R&R [Doc. 98] in whole, and **DENY** defendant's Motion to Suppress [Doc. 92].

---

[1] The Court notes that the government's response was filed 27 days after defendant's objections, and therefore, is untimely under this Court's local rules. *See* E.D. Tenn. L.R. 7.1(a). However, in the interests of justice, the Court will consider the government's belated response.

## I.   Background

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motion.  Moreover, the Court notes that the parties do not object to the factual basis in the magistrate judge's R&R [*See* Doc. 103, p. 2; Doc. 104, p. 1], and therefore, the Court will adopt the following facts from the R&R [Doc. 98].

Defendant is charged with conspiring to distribute and possess with intent to distribute heroin (Count 1), possession of firearms in furtherance of a drug trafficking crime (Count 3), and being a felon in possession of a firearm (Counts 2 & 4).  Defendant's Motion to Suppress arises out of the execution of a search warrant at 2314 California Road on July 19, 2019.

On July 18, 2019, Knox County Sheriff's Office ("KCSO") Detective Tyler Ballard presented an affidavit in support of search warrants for an apartment at Lula Powell Drive and a residence at California Road.  The 17-page affidavit details a confidential informant's ("CI") controlled purchases of heroin from defendant at room 135 at the Days Inn motel on May 9, July 8, July 11, and July 14, 2019, and at an apartment on Lula Powell Drive on May 22, 2019.  On July 18, 2019, the CI told Detective Ballard that defendant had moved from the Days Inn and was staying at 2314 California Road.  On that same date, the CI conducted a controlled purchased of one gram of a powder purportedly containing fentanyl and a white cutting agent from defendant at the California Road residence.  The affidavit also contains information on heroin purchases from defendant by three other CIs and a

2

named informant at the Days Inn, Lula Powell Drive, and other locations. Based upon the information in Detective Ballard's affidavit, Knox County Criminal Court Judge G. Scott Green issued search warrants for the Lula Powell Drive apartment and the California Road residence on July 18, 2019.

Defendant moved to suppress the evidence seized from the search of the California Road residence and his July 19, 2019, statement to law enforcement. The parties appeared before Judge Poplin on March 4, 2022, for a hearing on the motion.

At the evidentiary hearing, the government introduced a video recording of the CI's interaction with defendant at the California Road residence on July 18, 2019. The recording contains video of the CI inside the residence for several minutes, after which the video is black, but the audio continues. When the CI first enters the residence, defendant is sitting in a recliner with small baggies and money in his lap. Defendant is also holding paper money in his hand. The video resumes at approximately 35 minutes and 40 seconds into the recording, as the CI leaves the residence. The remaining video shows the CI walking.

The government also introduced the Report of Investigation of Special Agent James E. Makemson of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). The report states that Special Agent Makemson retrieved 11 drug exhibits related to defendant from KCSO Narcotics Unit and sent these exhibits to the Drug Enforcement Administration ("DEA") laboratory for testing. The DEA test of the suspected controlled substance from the July 18, 2019, controlled buy revealed the powder contained no

controlled substances. The DEA testing of the drugs seized during the July 19, 2019, search of the California Road residence revealed these substances to be heroin, methamphetamine, and a powder that contained no controlled substances.

The government also entered the audio recording of Detective Ballard's interview of defendant on July 19, 2019, and a copy of a Waiver of Rights Form, dated July 19, 2019, signed by defendant.

Detective Ballard testified that he is a KCSO detective assigned to the narcotics division. Based upon the information from a CI, Detective Ballard began investigating defendant's narcotics trafficking in early 2019. He said the CI told him that defendant was a heroin dealer and was known to carry weapons. When he began investigating defendant, defendant was based in an apartment but subsequently moved to the Days Inn on Callahan Drive in North Knoxville. Thereafter, Detective Ballard conducted multiple controlled buys from defendant using the CI.

Detective Ballard described the process for a controlled buy of drugs with a CI. He said before the controlled buy, law enforcement searches the CI and their car to confirm no controlled substances are on their person or in their car. Law enforcement provides the money that the CI uses to purchase drugs from the target. Detective Ballard said prior to July 18, 2019, law enforcement used a CI to make multiple controlled buys from defendant at locations other than the California Road residence. He said these controlled buys are described in the affidavit in support of search warrants. Detective Ballard acknowledged that the search warrant affidavit contains an error on page 14, which states that a red Jeep

4

is registered to Monique Houston. He said, instead, the red Jeep was registered to Kewanna Snowden. Also on page 14, the address to which the Jeep is registered is erroneously given as 2314 California Drive rather than 2314 California Road. Detective Ballard said these are the only two inaccurate statements in the affidavit.

Detective Ballard testified that a CI conducted a controlled buy from defendant at the California Road residence on July 18, 2019. He said he met with the CI, searched him, and gave him money, before driving the CI to a location close to the California Road residence. Detective Ballard watched the CI walk to the residence. Detective Ballard identified defendant as the individual sitting in a recliner on the video recording of the controlled buy. According to Detective Ballard, the video recording shows that defendant has money and a baggie containing a powder on his lap. He said the video does not show a "hand-to-hand exchange" of drugs for money. Detective Ballard testified that when the CI returned to his vehicle, the CI gave him a bag of drugs and the recording equipment.

Detective Ballard said after the controlled buy, he prepared the search warrant affidavit. He was present at the execution of the search warrant along with ATF Special Agent Makemson, Captain David Ambrose, Lieutenant Chris Bryant, Detective Caleb Shuford, and members of the SWAT team. Defendant was interviewed the day of the execution of the search warrant, and Detective Ballard recorded the interview on his digital recording device.

Detective Ballard said he advised defendant of the *Miranda*[2] rights, but the advice of rights was not captured on the audio recording. He said it is his normal practice to record the entire interview, and he did not know why the advice of *Miranda* rights was not recorded. Detective Ballard stated that the advice of rights could have been "clipped off" when he transferred the file. Alternatively, he said if defendant and Houston were advised of the *Miranda* rights at the same time, that would have occurred before he started the recording. Detective Ballard said he would have read the *Miranda* rights from his cell phone, because he did not have a card containing the *Miranda* rights at that time. He said he did not recite the *Miranda* rights from memory. Detective Ballard said defendant did not ask for an attorney and agreed to answer questions. At the end of the interview, Detective Ballard asked defendant to sign a rights advisement waiver form. He said he asked defendant to sign the waiver at the end of the interview because he had to get the form from his car. Defendant signed the waiver and initialed after each of his rights. Detective Ballard signed the waiver as a witness.

On cross-examination, Detective Ballard stated that he debriefed the CI about what occurred after the July 18, 2019, controlled buy, and included in the affidavit the statements the CI said defendant made, including a statement that the drugs had been cut. Detective Ballard agreed that the CI went to the controlled buy intending to purchase heroin but reported during the debrief that he received fentanyl.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

6

Detective Ballard stated that he presented the affidavit in support of search warrants to Judge Green, who signed the search warrants for both residences. Detective Ballard did not recall whether he discussed the criminal history of the CI with Judge Green when he applied for the search warrant. He said he typically does not disclose this information. Detective Ballard also did not recall discussing with Judge Green that the CI had been useful to law enforcement in the past and had assisted law enforcement in obtaining unrelated drug arrests.

Detective Ballard testified that he was present during the execution of the search warrant at the California Road residence on July 19, 2019. He was present when the SWAT team entered the residence. The SWAT team detained defendant inside the residence. Detective Ballard said after he entered the residence, defendant was brought outside. He did not recall if he spoke with defendant while defendant was inside the residence. He said it is his practice to turn the recording device on just before he begins an interview.

Detective Ballard stated that he first spoke with defendant after defendant was brought outside. Defendant was first brought to the front porch and was then taken to stand beside one of the vehicles by the road. Detective Ballard said that defendant and Houston were both sitting on the front porch, and he could have given the *Miranda* warnings to them then. He described defendant as being very willing to cooperate. Detective Ballard said defendant did not want an attorney and was forthcoming with information on the questions he asked. He said defendant seemed tired because the officers had just awakened him. Detective Ballard said it was around 6:00 or 6:30 a.m. when he spoke with defendant.

He stated that while he was talking with defendant, the other officers searched the residence. He agreed that officers were going in and out of the house and were asking defendant about items seized. He agreed that this procedure allowed them to obtain admissions from defendant about his possession of items seized. He did not know how long he had been interacting with defendant before he turned on the recording device.

On redirect examination, Detective Ballard testified that he does not typically provide a judge with information that is not in the affidavit supporting the search warrant. He agreed he was fairly confident that all the information he provided the judge in applying for the search warrants is contained in the affidavit. He said he did not deliberately or intentionally provide an incorrect name on page 14 of the affidavit. He said this was a typographical error. Detective Ballard said this incorrect name did not change the fact that a controlled buy occurred at the California Road residence the previous day.

Detective Ballard said the CI used in this case was a paid informant. He said he believed the CI had a prior conviction for felony theft and some charges for simple possession. Detective Ballard said the CI was helping law enforcement because he wanted to get drugs off the street.

Defendant testified that he reviewed with defense counsel the video of the alleged controlled purchase of narcotics on July 18, 2019. He denied that he sold narcotics to the CI on this date. He said his memory of that day was "pretty good." Defendant said he was present during the execution of the search warrant around 6:00 or 6:30 a.m. at the California Road residence. He agreed that, during that time, he was struggling with drug addiction

8

and was using heroin, methamphetamine, and marijuana. He agreed that he was surprised when the SWAT team entered the California Road residence. Defendant said he was detained and handcuffed. He said Detective Ballard entered the residence and asked him what he was doing with guns. He said he was then taken outside onto the front porch and, later, into the front yard. Defendant said numerous officers were going in and out of the house, and he felt overwhelmed and nervous. He said he did not recall Detective Ballard advising him of the *Miranda* rights.

Defendant testified that he is 39 years old and that, at the time of the execution of the search warrant, he had been interviewed by law enforcement on 3 prior occasions. He said he was familiar with the *Miranda* rights and understood them to mean that he had the right to remain silent. He agreed that he was also familiar with the right to have an attorney present for questioning. He said he and the officers had a "regular conversation" during the execution of the search warrant.

Defendant agreed he had never had a conversation like this with anyone else and, despite Detective Ballard's tone, it was not a normal conversation. He said he did not understand the rights waiver because he was under the influence of controlled substances. Defendant said he subsequently had a drug test and was positive for heroin, methamphetamine, and marijuana. He agreed that he was abusing drugs into the early morning hours of June 19, 2019. He agreed he felt pressured to talk to Detective Ballard and that as he was speaking with the officers, he saw what was happening inside the house. He said he primarily spoke with Detective Ballard, although he thought another officer

9

asked him about his cellular phone. Defendant said that he was handcuffed during his statement and Houston was inside the house.

On cross-examination, defendant testified that the initials on the rights waiver form are his. He admitted signing the rights waiver form but said he did not remember signing it. He agreed the reason that he did not remember was because he was under the influence of multiple drugs.

Defendant said he was "pretty sure" that Detective Ballard did not advise him of his rights that morning, although he knew his rights. He agreed that he talked about obtaining drugs in his interview. He said he was selling and using drugs at that time, but he did not sell any drugs at the California Road residence on July 18, 2019. Defendant said the CI must have had drugs on his person when he came into the residence because he did not sell drugs to the informant. He said no one else was selling drugs at the California Road residence on July 18, 2019. Defendant testified that the drugs seized from the California Road residence on July 19, 2019, were his. He said he did not sell drugs to the CI on the preceding day, because the CI did not talk to him about purchasing drugs and the drugs were not "real drugs."

After the hearing, Judge Poplin issued the R&R, recommending that the Court deny defendant's Motion to Suppress [Doc. 98]. Of relevance, Judge Poplin found that the search warrant affidavit sufficiently established the reliability of the CI [*Id.* at 15–16]. Judge Poplin noted that the Sixth Circuit has established that an affiant need only specify that a CI has given accurate information in the past to qualify as reliable, and defendant

10

has not pointed to any case law supporting his argument that a statement of a CI's criminal history is necessary [*Id.* at 16–17]. Alternatively, Judge Poplin stated that an affidavit that provides insufficient information about a CI's past reliability can establish reliability based on independent corroboration, and, in this case, Detective Ballard corroborated the CI's information, including that he purchased suspected heroin from defendant on July 18, 2019, at the California Road residence [*Id.* at 17–18].

Judge Poplin also found that defendant has not established that a *Franks*[3] hearing is necessary [*Id.* at 23–29]. Regarding statements in the search warrant affidavit about a controlled purchase from the California Road residence, Judge Poplin found that the evidence does not support a contention that Detective Ballard deliberately or recklessly included a false statement in the affidavit [*Id.* at 27]. The CI presented Detective Ballard with a powdered substance consistent with a fentanyl mixture, officers took custom precautions of searching and surveilling the CI before and during the controlled buy, and the CI had reliably assisted law enforcement before, including conducting prior controlled buys from the defendant [*Id.*]. Thus, Judge Poplin found that the evidence supports a conclusion that the CI conducted a controlled buy of what he believed to be drugs from defendant at the California Road residence [*Id.* at 29]. Moreover, Judge Poplin found that, although the powder turned out to not be a controlled substance, Detective Ballard did not know and had no reason to suspect it was not a controlled substance, and therefore, his statement regarding the controlled buy was not deliberately or recklessly false [*Id.*].

---

[3] *Franks v. Delaware*, 438 U.S. 154 (1978).

Further, as to the false statement in the affidavit that Houston owned a red Jeep registered to the California Road address, Judge Poplin found that, in addition to not rising to the level of culpability required for exclusion, as Detective Ballard stated that such was a typographical error, it was also not material to a finding of probable cause. Judge Poplin found that the nexus between the California Road residence and evidence of drug dealing was present from the July 18 controlled buy, and therefore, the statement about the car was not necessary to find a nexus [*Id.*].

Finally, regarding defendant's statements to police during the execution of the search warrant, Judge Poplin found that defendant was advised of his *Miranda* rights and voluntarily waived those rights [*Id.* at 30–37]. Judge Poplin credited Detective Ballard's testimony that he advised defendant of his *Miranda* rights orally before beginning the interview, which he read from his cell phone. Moreover, Judge Poplin noted that, at the end of the recorded interview, Detective Ballard mentions "those *Miranda* rights I read to you, I'm going to have you sign a confirmation . . . that they were read to you," which Judge Poplin found corroborated Detective Ballard's testimony that he read the *Miranda* warnings before the interview [*Id.*]. For this reason, Judge Poplin did not credit defendant's testimony that he was "pretty sure" Detective Ballard did not advise him of his rights [*Id* at 31–32].

Judge Poplin also found that defendant's waiver of his *Miranda* rights was evidenced by his signing of the written waiver and his conduct during the interview [*Id.* at 33]. Judge Poplin noted that defendant had spoken with police on 3 prior occasions

12

and knew his rights, but, during the 47-minute interview, never asked for an attorney or expressed a desire to end the interview, but instead, repeatedly told officers he wanted to cooperate. Further, Judge Poplin noted that defendant did not object to Detective Ballard's statement that he had previously read the *Miranda* rights and was following up with a rights waiver [*Id.*]. Considering the totality of the circumstances, Judge Poplin concluded that this waiver was voluntary, noting that the interviewing officers did not act coercively, defendant was interviewed in the yard of the residence where he was staying, during the interview Detective Ballard moved defendant into larger handcuffs, allowed him to smoke two cigarettes, and gave him a soft drink, and defendant testified that the interview was a "regular conversation" [*Id.* at 35]. Moreover, Judge Poplin found that the recording of the interview did not substantiate defendant's claims that he was overwhelmed and under the influence of controlled substances, as he responded to questions appropriately, attempted to improve his situation by cooperating, and expressed concern about Houston, his children, and his dog, as well as the effect of his cooperation [*Id.*].

## II.    Standard of Review

The Court reviews *de novo* those portions of the R&R to which the defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the R&R, the motion to suppress, the parties' underlying and supporting briefs, the defendant's objections, and the government's response to those objections, all in light of the applicable law.

Case 3:19-cr-00155-TAV-DCP    Document 105    Filed 06/23/22    Page 13 of 24    PageID #: 733

## III.    Analysis

Defendant raises three objections to the magistrate judge's R&R.  Specifically, he objects to the magistrate judge's findings that: (1) the search warrant affidavit established that the CI was sufficiently reliable; (2) defendant has not established that Detective Ballard deliberately or recklessly included false statements in the search warrant affidavit that were critical to a finding of probable cause; and (3) defendant was advised of his *Miranda* rights and voluntarily waived those rights when he spoke to police during the execution of the search warrant [Doc. 103].

### A.    Reliability of Confidential Informant

Defendant first objects to the magistrate judge's finding that the search warrant affidavit contained information sufficient to establish that the CI used for the controlled purchase on July 18, 2019, was sufficiently reliable [Doc. 103, p. 2].  Specifically, defendant argues that, while the affidavit refers to a number of arrests resulting from the CI's information, it is unclear whether those arrests were related to separate Tennessee Bureau of Investigation investigations or Detective Ballard's investigations [*Id.* at 3].  Moreover, defendant argues that the affidavit did not provide any details about the breadth of the CI's information in regard to obtaining prior search warrants, such as the type and quantity of the drugs seized or whether those arrested were charged with felonies or misdemeanors [*Id.*].  Further, defendant argues that the affidavit failed to mention the CI's identity or criminal history, nor whether the issuing judge was made aware of this information [*Id.* at 4].  Defendant argues that, to justify the search, Detective Ballard

14

needed to corroborate the CI's statement that defendant vacated his motel room and moved to California Road [*Id.*].

The government responds that the magistrate judge properly concluded that the affidavit established that the CI was reliable, and Detective Ballard corroborated the CI's reliability with information from the investigation, including conducting multiple controlled buys from the defendant [Doc. 104, p. 2].

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. If probable cause to issue a search warrant is gained from information provided by a confidential source, the issuing judge "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (quotation marks omitted); *see also Illinois v. Gates*, 462 U.S. 213, 233 (1983) (holding that a confidential informant's reliability and basis of knowledge are "relevant considerations in the totality-of-the-circumstances analysis"). An informant's veracity or reliability and basis of knowledge are not rigid categories. *Gates*, 462 U.S. at 233. Instead, deficiencies in one aspect can be made up by a strong showing in the other. *Id.*

Here, the search warrant affidavit states the following regarding the CI:

This CI has been providing information to me since March of 2018 and has also worked for the T.B.I. in Claiborne County, Tennessee. Since March of 2018, as a result of information from this CI, there have been at least ten (10)

15

> search warrants issued where illegal narcotics were seized and at least twenty (20) individuals have been arrested on drug related chargers [sic].

[Doc. 92, p. 5]. As the magistrate judge correctly noted, Sixth Circuit "precedent 'clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.'" *United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013) (quoting *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001)). And additional corroboration is not required when the affidavit contains the personal observations of a confidential informant, known to the affiant to be reliable. *Brown*, 732 F.3d at 574. The quoted language from the search warrant affidavit clearly establishes that the CI had previously provided reliable information, and was sufficient for a finding that the CI had provided reliable information in this case.

In his objections, defendant does not address this case law. Instead, he simply reiterates his prior argument about the affidavit's lack of other information indicating the CI's reliability without citation to any case law supporting an argument that such additional information is required for a finding of reliability. In fact, the only case defendant cites regarding this issue [Doc. 103, p. 3] supports the magistrate judge's conclusion, stating "[t]he fact that an informant is a person of proven reliability may be sufficient in itself to establish the veracity of the informant's hearsay statements" and "[w]hen an informant has a proven track record for providing reliable information, corroboration of the information he provides is not necessarily essential[.]" *United States v. Smith*, 182 F.3d 473, 479 (6th Cir. 1999).

16

In light of the Sixth Circuit precedent, the Court finds that the affidavit's statement regarding the CI's provision of prior reliable information was sufficient to establish the CI's reliability in this case. Moreover, defendant does not address the magistrate judge's alternate conclusion that, even if more information was necessary to establish the CI's reliability, Detective Ballard sufficiently corroborated the CI's information in this case, which is a separate sufficient ground for denial of defendant's Motion to Suppress. For these reasons, defendant's objections to the magistrate judge's findings regarding the reliability of the CI are **OVERRULED**.

### B. *Franks* Hearing

Next, defendant objects to the magistrate judge's finding that the evidence did not support his contention that Detective Ballard intentionally or recklessly included a false statement in the affidavit [Doc. 103, pp. 4–5]. He contends that the substances seized from the California Road residence were not received by the lab until August 12, 2019, and, with no mention of field testing in the affidavit, it does not appear Detective Ballard had timely scientific confirmation that defendant was selling controlled substances, and this was a reckless assumption [*Id.* at 5]. Defendant also argues that some of the normal controls of a controlled purchase were absent on July 18, 2019, which speaks to Detective Ballard's "reckless enthusiasm" in obtaining a search warrant [*Id.* at 6]. Defendant also contends that the "typographical error" in the affidavit has more consequence than the magistrate judge found, because it indicates that defendant's girlfriend, Houston, had a vehicle

registered to the California Road address, which was a necessary fact to establish the nexus between the residence and drug dealing [*Id.*].

The government responds that the magistrate judge appropriately concluded that a *Franks* hearing was not warranted, after addressing the errors in the affidavit and concluding that Detective Ballard did not deliberately or recklessly include false statements in the affidavit [Doc. 104, p. 2]. The government argues that the incorrect statements would also not be necessary to a finding of probable cause as there is overwhelming evidence that defendant was conducting controlled buys at multiple residences and conducted one at the California Road address the day prior to the search warrant [*Id.* at 2–3]. Accordingly, the government contends that the minor errors in the affidavit are of no consequence to probable cause [*Id.* at 3].

"In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement." *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citing *Franks*, 438 U.S. at 171). A defendant seeking a *Franks* hearing, "must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *Id.* (quoting *Franks*, 438 U.S. at 171). "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Id.* An officer's statement is only considered to be issued with "reckless disregard for the truth" if the defendant shows the affiant subjectively entertained "serious doubts as to the truth" of his allegations. *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir.

18

2019). "Allegations of [an officer's] negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171.

Defendant's *Franks* hearing objections are based on two separate allegedly false statements in the search warrant affidavit: (1) that the CI purchased controlled substances from defendant on July 18, 2019; and (2) that Houston owned a red Jeep that was registered to the California Road address. The Court will address each of these in turn.

As to the controlled purchases, defendant appears to argue that Detective Ballard did not have "scientific confirmation" that the substances obtained by the CI were "controlled substances." However, defendant cites no case law to support a contention that an affiant must have "scientific confirmation" that a powdery substance obtained during a controlled buy is in fact a "controlled substance" before obtaining a search warrant. And, regardless, defendant does not address the fact that the CI informed Detective Ballard that the substances obtained were controlled substances, and therefore, Detective Ballard had no reason to know or suspect that the substances were not controlled substances. Because the affiant's state-of-mind in including a "false" statement in a search warrant affidavit is critical to the *Franks* hearing analysis, the Court finds that defendant has not established that a *Franks* hearing is warranted on this issue.

As to the information in the affidavit that Houston owned a vehicle that was registered to the California Road address, defendant primarily contests the magistrate judge's conclusion that this information was not necessary to a finding of probable cause. But the magistrate judge also found that Detective Ballard did not deliberately or recklessly

include this error in the affidavit, which is an independent ground for denying defendant's request for a *Franks* hearing. And this conclusion is supported by Detective Ballard's testimony at the suppression hearing that the error was a typographical error and not intended. Moreover, the Court agrees with Judge Poplin's conclusion that the information regarding the car registration was not necessary to establish a nexus between drug trafficking activities and the California Road residence in light of the evidence of the July 18, 2019, controlled purchase at the residence.

For all these reasons, the Court finds that the magistrate judge correctly concluded that defendant has not established that Detective Ballard included false statements in the search warrant affidavit with disregard or recklessness regarding the truth of those statements, and therefore, a *Franks* hearing is not warranted. Defendant's objections on this ground are **OVERRULED**.

### C. Voluntariness of Post-Arrest Statements

Finally, defendant objects to the magistrate judge's conclusion that he was advised of his rights prior to speaking with police [Doc. 103, p. 7]. Defendant notes that there is no recording of Detective Ballard informing defendant of his rights prior to the interview, and, while Detective Ballard stated that he orally notified defendant of his rights, defendant testified he was "pretty sure" Detective Ballard did not read him his rights. Defendant contends that the magistrate judge improperly credited Detective Ballard's testimony on this point [*Id.*].

Additionally, defendant objects to the magistrate judge's finding that defendant knowingly and voluntarily waived his *Miranda* rights [*Id.*]. He states that the rights waiver that he signed after talking with Detective Ballard cannot be applied retroactively Moreover, defendant contends that, because he was not properly provided his *Miranda* warnings at the outset, the magistrate judge improperly concluded that defendant implicitly waived them in light of his statements [*Id.*]. Defendant contends that his providing a statement was based on the stress of the situation and his use of controlled substances, which undercut his judgment [*Id.* at 7–8]. Defendant also claims that his statements were the product of coercion because he was in custody, handcuffed, and had multiple officers present confronting him with specific questions about the search [*Id.* at 8].

The government responds that the magistrate judge properly concluded that defendant's statement was voluntary [Doc. 104, p. 3]. The government states that, although the rights advisement was not recorded, defendant has failed to show that anything nefarious occurred in obtaining his statement. During the recorded interview, defendant did not appear under any duress, and, in fact, attempted to help himself by providing information to law enforcement about his drug trafficking activities. The government also argues that the magistrate judge properly found defendant's testimony that he was "pretty sure" Detective Ballard did not advise him of his rights to be incredible [*Id.*].

The Fifth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a

21

suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment. *Miranda*, 384 U.S. at 478–79; *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998). A waiver of *Miranda* rights must be knowingly and voluntarily given, but there is no requirement that a defendant waive his or her rights in writing. *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002). A defendant's "understanding of his rights and a course of conduct indicating waiver" can constitute a waiver of rights, even in the absence of an express waiver. *California v. Braeseke*, 444 U.S. 1309, 1310 (1980). The prosecution bears the burden of proving a defendant has waived his *Miranda* rights and, in the absence of an express waiver, that burden is heavy; however, "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *Id.*

Defendant first challenges Judge Poplin's credibility determination in light of the conflicting testimony from Detective Ballard and defendant regarding the provision of a *Miranda* warning. The Court first notes that "[i]t has long been the practice of our judicial system to leave credibility determinations to the fact finder best equipped to make those determinations." *United States v. Caldwell*, No. 1:13-cr-128, 2015 WL 179583, at *2 (E.D. Tenn. Jan. 14, 2015) (applying this principle to a magistrate judge's credibility finding from a suppression hearing). The Court finds that, because she presided over the suppression hearing, and heard the first-hand testimony of the parties, Judge Poplin is in the best position to make a credibility determination in this case.

However, briefly addressing the merits of defendant's argument, the Court acknowledges that the record reflects that: (1) Detective Ballard testified at the suppression

22

hearing that he provided defendant with the *Miranda* warnings, read from his cell phone, but that warning was not captured on the audio recording of the interview; and (2) defendant testified that he was "pretty sure" Detective Ballard did not read the *Miranda* warnings [Doc. 98, pp. 31–32]. Ultimately, based on the record alone, the Court agrees with Judge Poplin's credibility determination because, while there is no recording of the advice of rights, Detective Ballard's testimony that he read defendant his rights before the interview is corroborated by Detective Ballard's recorded statement near the end of the interview referencing a prior *Miranda* warning. Moreover, it appears from the record that Detective Ballard's testimony on this point was more definitive than defendant's testimony, as defendant qualified his testimony by stating he was "pretty sure" Detective Ballard did not read the *Miranda* rights. In light of this, the Court agrees with Judge Poplin's conclusion that Detective Ballard's testimony is more credible, and therefore, finds that defendant was advised of his *Miranda* rights prior to the interview.

Next, to the extent that defendant argues that his post-interview signing of the rights waiver was insufficient, this issue is mooted by the Court's finding that defendant was orally advised of his *Miranda* rights before the interview.

Finally, defendant appears to challenge the magistrate judge's conclusion that his statements were voluntarily given and not the product of coercion. However, defendant simply reargues his position and does not address any of the specific evidenced relied upon by the magistrate judge. This is not an appropriate objection. *See Daniels v. Colvin*, 3:14-cv-546, 2016 WL 792416, at *1 (E.D. Tenn. Feb. 29, 2016) (stating that an objection

which accomplishes "nothing more than stat[ing] a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used" in this context (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004))). Regardless, for the reasons stated in the R&R, the Court finds that defendant's statements were voluntarily given and not the produce of coercion. Accordingly, the Court finds that defendant was advised of his *Miranda* rights prior to his interview, and he voluntarily waived those rights, therefore, his objection on these grounds are **OVERRULED**.

## IV. Conclusion

Upon a careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct. Thus, defendant's objections [Doc. 103] are **OVERRULED**. The Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 98] in whole, and incorporates the R&R into this Memorandum Opinion and Order. The Court hereby **DENIES** defendant's Motion to Suppress [Doc. 92].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE